IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERTA LONOAEA, Individually and as Guardian for RONNIE J. LONOAEA, an Incapacitated Person, | ) CIVIL NO. 07-00369 JMS-KSC<br>)<br>) FINDINGS AND<br>) RECOMMENDATION TO GRANT<br>) DEFENDANTS' MOTION TO<br>) TRANSFER |
|     Plaintiffs, | ) |
|     vs. | )<br>)<br>) |
| CORRECTIONS CORPORATION OF AMERICA; JOHN D. FERGUSON, JIMMY TURNER; ANTHONY GRANDE; STATE OF HAWAII DEPARTMENT OF PUBLIC SAFETY; DOE DEFENDANTS 1-100 and DOE ENTITIES 1-100, | )<br>)<br>)<br>)<br>)<br>)<br>) |
|     Defendants. | )<br>) |

FINDINGS AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION TO TRANSFER

On September 13, 2007, Defendants Corrections Corporation of America ("CCA"), John D. Ferguson ("Ferguson"), Jimmy Turner ("Turner"), Anthony Grande ("Grande"), and the State of Hawaii Department of Public Safety ("DPS") (collectively "Defendants") filed a Motion to Transfer ("Motion").  Plaintiffs Roberta ("Roberta") and Ronnie Lonoaea ("Lonoaea")

(collectively "Plaintiffs") filed an Opposition on October 11, 2007.  On October 18, 2007, Defendants filed their Reply.

The matter came on for hearing on October 29, 2007.  At counsel's request, the hearing was consolidated as to the instant Motion and the motion to transfer filed in Lee v. Corrections Corporation of America, et al., CV 07-00368 ACK-KSC.  Daniel Struck, Esq., appearing pro hac vice, and Brian Bilberry, Esq., appeared on behalf of Defendants.  Michael Green, Esq., appeared on behalf of Plaintiffs.  After careful consideration of the motion, the supporting and opposing memoranda, and the arguments of counsel, the Court FINDS and RECOMMENDS that the district court GRANT Defendants' Motion.

BACKGROUND

Due to overcrowding in Hawaii prisons, DPS entered into a contract with CCA for the confinement, care and custody of Hawaii inmates at mainland facilities.  Thereafter, Lonoaea was sent to Tallahatchie County Correctional Facility ("TCCF"),

2

CCA's privately run prison in Tutwiler, Mississippi. The instant action arises out of an incident on July 17, 2005 at TCCF, during which inmates confined with Lonoaea in the Special Housing Incentive Program ("SHIP") unit purportedly attacked and beat Lonoaea in his cell.  He allegedly suffered head and facial injuries, including permanent brain injury. Apparently, the cell doors in the segregation unit that housed Lonoaea were inadvertently unlocked, which allowed the inmates to exit their cells.  Lonoaea has since been transferred to the Red Rock Correctional Facility in Arizona.

On July 11, 2007, Plaintiffs filed their Complaint, which alleges: 1) 42 U.S.C. § 1983 claim for failure to monitor and supervise (Count I); 2) 42 U.S.C. § 1983 claim for failure to properly train and hire (Count II); 3) negligent hiring and supervision (Count III); 4) negligence (Counts IV and V); 5) Intentional Infliction of Emotional Distress ("IIED") (Count VI); 6) Negligent Infliction of Emotional Distress ("NIED") (Count VII); 7) negligent entrustment

3

(Counts VIII and IX); 8) loss of consortium (Count IX
[sic]); and 9) punitive damages (Count XI).

DISCUSSION

Defendants argue that because a substantial
part of the events or omissions giving rise to
Plaintiffs' claims did not occur in Hawaii, venue is
improper in this district.  They therefore seek
transfer of the instant action to Mississippi.  Even if
venue were proper, Defendants postulate that transfer
would nevertheless be appropriate based on the
convenience of the parties and witnesses, and the
interest of justice.

Plaintiffs counter that the basis for their
claims originate from the contract between CCA and DPS.
According to Plaintiffs, the series of events leading
up to the incident at TCCF occurred in Hawaii and
constitute a substantial part of the events or
omissions giving rise to their claims such that venue
properly lies in this district.  Plaintiffs maintain
that in light of the existence of proper venue, the
convenience of the parties and witnesses, and the

4

interest of justice militate against transfer.

A.   Venue in this District is Improper

Where jurisdiction is not based solely on diversity of citizenship, as is the case with 42 U.S.C. § 1983 actions, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  There is no dispute that the applicable inquiry for determining venue in the present case is whether a substantial part of the events or omissions giving rise to the claims occurred in Hawaii.[1] "Substantiality is measured by considering the nexus between the events and the nature of the claims; [that

---

[1]  Because all Defendants do not reside in Hawaii, subsection (1) is inapplicable.  As the Court will later discuss, the action could have been brought in Mississippi.  Therefore, subsection (3) is not relevant to the inquiry.

is,] 'significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere.'" Ukai v. Fleurvil, Civil No. 06-00237 JMS/KSC, 2006 WL 3246615, *3 (D. Haw. Nov. 7, 2006) (quoting Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005)).  The court should also look to "'the entire sequence of events underlying the claim,' Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001), and focus[] on the defendants' (rather than the plaintiff's) actions." Id. (citations omitted).

Plaintiffs assert that venue is proper in Hawaii because a substantial part of the events or omissions giving rise to their claims occurred here.[2]

_____

[2] Plaintiffs emphasize that because CCA, a corporation, availed itself of this forum by contracting with DPS, it is deemed a resident of Hawaii for venue purposes.  While the Court recognizes that defendant corporations are found to reside in any judicial district in which they are subject to personal jurisdiction at the time the lawsuit commences, see 28 U.S.C.§ 1391(c), CCA's residence is irrelevant to the second test under § 1391(b).  Indeed, "[t]he statutory standard for venue focuses not on whether a defendant

In particular, Plaintiffs focus on the contract between
CCA and DPS, under which inmates such as Lonoaea were
involuntarily moved to prisons on the mainland.
Plaintiffs charge DPS with maintaining and overseeing
the safety and well-being of the Hawaii inmates.  They
explain that the contract included reporting
obligations that would enable DPS to monitor the
treatment of the Hawaii inmates.  It is Plaintiffs'
position that DPS's failures and omissions, which took
place in Hawaii, caused the subject incident.  Although
Plaintiffs acknowledge that the subject incident
occurred in Mississippi, they insist that venue is
proper in Hawaii because the significant events leading
up to their claims took place in Hawaii.

        In their Opposition, Plaintiffs focus closely

---

has made a deliberate contact-a factor relevant in the
analysis of personal jurisdiction-but on the location
where events occurred." Bates v. C & S Adjusters,
Inc., 980 F.2d 865, 868 (2d Cir. 1992) (footnote
omitted).  CCA's residence would be relevant under the
test set forth in § 1391(b)(1) if all the remaining
defendants were also residents of Hawaii.  However, it
is undisputed that Turner, Ferguson, and Grande reside
out of state.

on DPS's obligations as provided for in the contract.[3]
Yet all of Plaintiffs' claims in the Complaint sound in
tort/civil rights.  Plaintiffs direct the bulk of their
allegations in the Complaint at CCA, Turner, Ferguson,
and Grande.  The claims asserted against DPS include
Count V (negligence), Count VI (IIED), Count VII
(NIED), Count IX (negligent entrustment), and Count IX[4]
(loss of consortium).  When assessing venue in tort
actions, courts consider factors such as "the place
where the allegedly tortious actions occurred and the
place where the harms were felt."  14D Charles A.
Wright, Arthur R. Miler, Edward H. Cooper, Federal
Practice and Procedure § 3806.1; see also Myers v.
Bennett Law Offices, 238 F.3d 1068, 1076 (9th Cir.

---

[3] Plaintiffs do not allege breach of contract in
the Complaint, but venue inquiries in contract claims
are determined by the "place of intended performance
rather than the place of repudiation."  Decker Coal Co.
v. Commonwealth Edison Co., 805 F.2d 834, 842 (9th Cir.
1986) (citations omitted).  In the instant case, the
place of intended performance is Mississippi.

[4] Plaintiffs appear to have mistakenly identified
the loss of consortium claim as Count IX, when it
should in fact be Count X.

8

2001) (locus of the injury is a relevant factor).

Here, it is clear that the significant events
or omissions material to Plaintiffs' claims occurred in
Mississippi, not Hawaii.  The subject incident, during
which Lonoaea allegedly sustained injuries, occurred at
TCCF.  The allegedly negligent monitoring, supervision,
training, and hiring by CCA, Turner, Grande, and
Ferguson, all occurred in Mississippi.  Moreover, the
IIED and NIED claims primarily, if not entirely, stem
from the subject incident and the conduct related
thereto.  Lonoaea experienced these harms and injuries
in Mississippi.  Although Roberta felt the effects of
the IIED and NIED claims in Hawaii, these claims can be
attributed to the events and/or omissions in
Mississippi.  Finally, while Roberta experienced the
alleged loss of consortium in Hawaii, it is derivative
of Lonoaea's injuries, which occurred in Mississippi.
First Ins. Co. of Hawai'i, Ltd. v. Lawrence, 77 Hawai'i
2, 5, 881 P.2d 489, 492 (1994) (citations omitted)
(loss of consortium claims "are derivative of the

9

injury to the spouse or other specified relative").

Even if the Court were to accept Plaintiffs' contention that the contract between CCA and DPS triggered a sequence of events that led to his injuries, any conduct or omission by DPS in Hawaii cannot be said to have *substantially* given rise to Plaintiff's claims.  Plaintiffs allege that DPS 1) failed to properly investigate, research and monitor CCA's prison facilities (negligence claim) and 2) negligently entrusted CCA, Ferguson, Grande, Turner, and other CCA employees with security equipment, controls, and facilities (negligent entrustment claim). Negligent entrustment arose from actions in Hawaii. However, this is not the substantial basis for Plaintiffs' claims.  With respect to negligence, any investigation, monitoring, or failures related to the same would likely have occurred in Mississippi, not Hawaii.  This is particularly so in light of the fact that DPS had State of Hawaii employees at TCCF to monitor performance of the contract and to inspect the

facility.   The Court accordingly finds that because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Mississippi, not Hawaii, venue in this district is improper.   <u>See</u>, <u>e.g.</u>, <u>Grandinetti, II v. Bauman</u>, CV 07-00089 ACK-KSC, 2007 WL 676012 (D. Haw. Feb. 28, 2007) (holding that Hawaii venue is improper where 1) the Hawaii defendants were dismissed and the remaining defendants did not reside in Hawaii and 2) the plaintiff's claims clearly arose from incidents that allegedly occurred at TCCF and were allegedly perpetrated by prison officials in Mississippi); <u>see also</u> <u>Jones v. Corrections Corp. of America</u>, CV 06-00651 HG-LEK, 2006 WL 2983018 (D. Haw. Oct. 16, 2006) (finding Hawaii venue improper where the plaintiff's claims arose from allegedly improper medical care received at a facility in Arizona and at TCCF and none of the defendants resided in Hawaii).

B.   <u>Transfer is Appropriate in the Interest of Justice</u>

Section 1406(a) of Title 28 of the United States Code applies to actions when venue is not proper

in the district where a plaintiff originally filed
suit.  It provides:  "[t]he district court of a
district in which is filed a case laying venue in the
wrong division or district shall dismiss, or if it be
in the interest of justice, transfer such case to any
district or division in which it could have been
brought."  28 U.S.C. § 1406(a).  A court should assess
the merits of a plaintiff's case in deciding whether
the interest of justice requires transfer rather than
dismissal.  See, e.g., King v. Russell, 963 F.2d 1301,
1304 (9th Cir. 1992) (examining the plaintiff's to
determine whether dismissal or transfer was
appropriate).  Neither Defendants nor the evidence
before the Court suggests that Plaintiffs brought the
action in bad faith.  Under the circumstances and in
the interest of justice, the Court thus finds that
transfer rather than dismissal is appropriate.

C.  <u>Transfer is Appropriate Even if Venue Were Proper</u>

        Had the Court determined that venue was proper
in this district, it would nevertheless recommend

12

transferring the case to Mississippi.  Section 1404(a) of Title 28 of the United States Code governs cases where the transferor court is the proper venue for the action.  It provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The purpose of the section is to "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'"  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27 (1960)).  Section 1404(a) vests "discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27 (1988) (citation and internal quotation marks omitted).

The Ninth Circuit has stated that courts must

13

weigh multiple factors in considering a motion for change of venue.   See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).   These factors include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Id. at 498-99 (internal footnotes omitted).   In applying § 1404(a), the Court must engage in a two-part inquiry.   First, the Court determines whether the action could have been brought in the transferee court. Second, the Court considers whether "the transfer 'will enhance the convenience of the parties and witnesses, and is in the interests of justice.'"   Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d 1232, 1243 (D. Haw. 2003); see also Kawamoto v. CB Richard Ellis,

<u>Inc.</u>, 225 F. Supp. 2d 1209, 1213 (D. Haw. 2002).

It is undisputed that Plaintiffs could have brought the action in the Northern District of Mississippi.  The Court therefore limits its analysis to the second inquiry, which requires consideration of three factors: 1) convenience of the parties; 2) convenience of the witnesses; and 3) the interests of justice.  <u>Id.</u> (citing <u>Lung v. Yachts Int'l, Ltd.</u>, 980 F. Supp. 1362, 1370 (D. Haw. 1997)).  If, upon balance of these factors, a court finds that the other forum is *clearly more convenient*, it will transfer the action. <u>Id.</u>  In assessing the interest of justice prong, the Court also considers public and private interest factors borrowed from the doctrine of *forum non conveniens*.  <u>Lung</u>, 980 F. Supp. at 1370 (citing <u>Decker</u>, 805 F.2d at 843).  The public factors include:

> (1) administrative difficulties flowing
> from court congestion; (2) imposition of
> jury duty on the people of a community
> that has no relation to the litigation;
> (3) local interests in having localized
> controversies decided at home; [and] (4)
> the interest in having a diversity case
> tried in a forum familiar with the law

15

that governs the action . . . [and] the avoidance of unnecessary conflicts of law.

Robinson, 304 F. Supp. 2d at 1244 (citing Lung, 980 F. Supp. at 1370) (citation omitted).

Private factors include:

(1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of witnesses; (3) possibility of viewing subject premises; [and] (4) all other factors that render trial of the case expeditious and inexpensive.

Id. (citing Lung, 980 F. Supp. at 1370) (citation omitted).

After considering and balancing the foregoing factors, the Court finds that transfer to Mississippi is appropriate.  Transfer will best serve the convenience of the parties and witnesses.  All of the parties except DPS[5] and Roberta are on the mainland. The Court acknowledges that the plaintiff's choice of forum is entitled to substantial weight and "'the defendant

_____

[5] According to defense counsel, DPS fully supports transfer to the Mississippi, where venue properly lies.

16

must [therefore] make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'" Resnick v. Rowe, 283 F. Supp. 2d 1128, 1144 (D. Haw. 2003) (citing Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1064 (D. Haw. 2000)).  However, in this case, Lonoaea is in Arizona, which is closer in distance to Mississippi than Hawaii.  Additionally, Roberta is largely involved in this case because of her appointment by the family court to act as Lonoaea's guardian.  Her claims arise because of the injuries to Lonoaea.  These circumstances weigh in favor of transfer.

A majority of the witnesses also reside on the mainland or are incarcerated there.  Defendants anticipate that thirty to forty CCA employees will testify.  Their Scheduling Conference Statement identifies 50 individuals who they expect to call as witnesses or depose, nearly all of whom are CCA employees at TCCF and all of whom reside in Mississippi.  Defendants also expect to depose Lonoaea,

17

Hawaii inmates, and medical providers who are either housed in or reside in Mississippi or Arizona.  At the hearing, defense counsel represented that to his knowledge, all of the inmate witnesses are located in Arizona.  Defendants explain that because a number of CCA employees at TCCF would testify, TCCF's operations would be significantly burdened if its employees have to attend trial in Hawaii.  Certainly, the convenience of the witnesses that Defendants expect to call would be served by transfer.

Plaintiffs note that the SHIPS unit at TCCF housed exclusively Hawaii inmates.  They believe that those inmates have either been transferred to CCA facilities in Arizona or returned to Hawaii and released.  Plaintiffs emphasize that having these inmates return to Mississippi would be difficult and costly, as the transport of inmates to Mississippi would require escorts, and the parole/release status of former inmates might require travel approval.  The Court is unpersuaded.  Other than generally asserting

18

that many inmate witnesses are located in Hawaii,
Plaintiffs have not identified any of these witnesses
nor approximated the number of witnesses located here
versus Arizona.  With respect to those inmates who are
in CCA facilities in Arizona, travel to Mississippi
would be less costly than travel to Hawaii.  Hawaii
venue is preferable only as to the inmates who are
either incarcerated here or who have been released and
reside in Hawaii.  However, there is an absence of
evidence to suggest that the majority of inmate
witnesses, or even a handful of inmate witnesses, are
in Hawaii.  Plaintiffs also stress that Lonoaea's
physicians are in Arizona, and others who treated
Lonoaea in Hawaii prior to his transfer to the mainland
will testify.  However, as already discussed, travel to
Mississippi from Arizona is less costly and easier than
travel to Hawaii.  Plaintiffs did not indicate how many
physicians from Hawaii will be called to testify, but
based on the number of witnesses identified by
Defendants, it is unlikely that the small number of

19

Hawaii doctors will outweigh the convenience of a Mississippi venue.

In accordance with the foregoing, it is clear that the majority of witnesses and parties reside in Mississippi or on the mainland.  The parties and witnesses not residing in Mississippi[6] at the time of trial can more easily travel to Mississippi than Hawaii.

Further, the interest of justice will be served by transfer.  Given that the subject incident occurred in Mississippi, there is a local interest in having the controversy decided there.[7]  TCCF would also be accessible for viewing, if necessary.  As it appears that many of the witnesses reside in Mississippi,

_____

[6]  CCA, Turner, Grande, and Ferguson reside in Tennessee.  Lonoaea is currently incarcerated in Arizona.

[7]  The Court recognizes that Hawaii also possesses an interest because the action involves a Hawaii inmate.  However, the Court finds that because a substantial part of the claims arises from conduct and/or omissions in Mississippi and the subject incident giving rise to this action occurred at TCCF, Mississippi's interest is greater.

20

compulsory process would be available for the attendance of unwilling witnesses.

To support Hawaii venue, Plaintiffs contend that Hawaii law must apply because 1) the contract so specifies and 2) the conduct causing the injury occurred in Hawaii.  Defendants postulate that Mississippi law applies to the tort claims.  While the Court is not in a position to make a determination about what law will ultimately apply, the Court notes that to the extent Plaintiffs do not specifically plead breach of contract, the fact that Hawaii law governs the contract does not militate in favor of retaining the case.

Further, Plaintiffs will not suffer prejudice from a biased jury if the action is transferred to Mississippi.  Plaintiffs argue that the action, if transferred, would be sent to Tallahatchie, Mississippi, where they presume that a substantial number of the approximately 14,900 residents are employed by CCA.  This is not the case.  The present

action would be transferred to the District Court for the Northern District of Mississippi.  The courthouse serving Tallahatchie, along with eighteen other counties, is located in Oxford, Mississippi.  <u>See</u> <u>http://www.msnd.uscourts.gov/loc_oxford.htm.</u>  Finally, the availability of records does not weigh strongly in favor of either venue, as it appears that records are maintained both in Hawaii and Mississippi.  Upon consideration of the statutory and private and public factors discussed above, and finding that they conclusively weigh in favor of Mississippi venue, the Court finds that transfer is appropriate.

<u>CONCLUSION</u>

Based on the foregoing, the Court FINDS that venue in this district is improper and that transfer serves the interest of justice.  Further, even if venue properly lay in Hawaii, transfer of this case would be appropriate.  The Court accordingly RECOMMENDS that the district court GRANT Defendants' Motion to Transfer and ORDER transfer of this action to the Northern District

of Mississippi.

IT IS SO FOUND AND RECOMMENDED.

DATED:   Honolulu, Hawaii, October 29, 2007.



_____
Kevin S.C. Chang
United States Magistrate Judge


CV 07-00369 JMS-KSC; Lonoaea, et al. v. Corrections Corp. of America, et al.; FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO TRANSFER